FILED

JUN 3 0 2004

LARRY W. PROPES, CLERK
FLORENCE, SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Civil Action No. 6:03350613

| | |
|---|---|
| Jerry E. Tucker and Shirley W. Tucker, ) | |
| ) | |
| Plaintiffs. ) | |
| ) | **AMENDED** MEMORANDUM OF |
| vs. ) | POINTS AND AUTHORITIES IN |
| ) | IN SUPPORT OF DEFENDANT |
| Blossman Gas of North Carolina, Inc. ) | BLOSSMAN GAS OF NORTH |
| d/b/a Blossman Propane Gas & Appliance; ) | NORTH CAROLINA, INC. d/b/a |
| and Rheem Manufacturing Company, ) | BLOSSMAN PROPANE GAS & |
| ) | APPLIANCE'S MOTION FOR |
| Defendants. ) | PARTIAL SUMMARY JUDGMENT |
| ) | |

The Defendant, Blossman Gas of North Carolina, Inc. d/b/a Blossman Propane Gas & Appliance, now files its Motion for Partial Summary Judgment and supporting Memorandum of Points and Authorities in reliance on the Exhibits accompanying its Motion and the pleadings, as well as the discovery filed in this lawsuit.

## STATEMENT OF THE FACTS

On or about October 3, 2000, Jerry and Shirley Tucker (hereafter collectively "the Tuckers") lost their home to fire caused by an unknown source. At the time of the fire, the Tuckers were insured by State Farm Insurance Company (hereafter "State Farm"). State Farm thereafter initiated an action, on behalf of the Tuckers, against Rheem Manufacturing Company (hereafter "Rheem Manufacturing"), the manufacturer of a gas water heater positioned in the Tucker's home prior to the fire, Blossman Gas of North Carolina, Inc. d/b/a Blossman Propane

Gas & Appliance (hereafter collectively "Blossman Gas"), the sellers and installers of the water heater. In their October 2, 2003 complaint, the Tuckers and State Farm allege five different causes of action: negligence, strict liability, breach of implied warranty, negligent supervision and spoliation of evidence. This motion followed.

## ARGUMENT

**A.     The Standard For Summary Judgment.**

Even when the evidence is viewed in the light most favorable to the Plaintiffs, there is no evidence in this case that the Tucker's water heater was destroyed, materially altered or improperly preserved by the Blossman Gas. Summary judgment should be granted whenever the record demonstrates that the requirements of Rule 56(c) have been met. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The entry of summary judgment is appropriate where there is no "genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP. The party seeking summary judgment bears the initial burden of demonstrating an "absence of a genuine issue of material fact." *Baughman v. AT&T*, 306 S.C. 101, 410 S.E.2d 537, 545 (SC 1991). The moving party's "initial responsibility 'may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case,'" *Id.* (*quoting Celotex*, 477 U.S. at 325), which is accomplished where the moving party is able to demonstrate the absence "'of an element essential to the [non-movant's] case, and on which that party will bear the burden of proof at trial.'" *Id.*, 410 S.E.2d at 545-46 (quoting *Celotex*, 477 U.S. at 322-23). Thus, in opposition to the motion for summary judgment, the Plaintiff has the burden of pointing to substantial evidence showing triable issues of facts relating to the essential elements of the claim.

Not every factual issue will defeat a motion for summary judgment. In order to defeat such a motion, there must be a *genuine issue of material fact*. Even as to a material fact, a dispute is "genuine only if a reasonable jury could return a verdict for the non-moving party based on the evidence adduced to demonstrate the dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In response to a summary judgment motion, the non-moving party cannot produce "a mere scintilla" of evidence to overcome the motion. *See Thomas v. Waters*, 315 S.C. 524, 445 S.E.2d 659, 661 (Ct. App. 1994); *Strother v. Lexington Co. Rec. Com'n.*, 324 S.C. 611, 479 S.E.2d 822, 829 (Ct. App. 1996) (*Anderson, J. dissenting*).

Where a properly supported motion for summary judgment is made, the opposing party must point to "specific facts, admissible in evidence, showing there is a genuine issue for trial." *Dickert v. Metropolitan Life Ins. Co.*, 306 S.C. 311, 411 S.E.2d 672, 673 (Ct. App. 1991), *aff'd in part and rev'd in part on other grounds*, 311 S.C. 218, 428 S.E.2d 700 (SC 1993); *Baughman*, 410 S.E.2d at 545. When a Plaintiff is faced with a Defendant's motion for summary judgment that is supported by the evidence, "the Plaintiff cannot defeat the motion by relying upon the mere allegations of his complaint, but must disclose the facts he intends to rely on by affidavit or proof." *Shupe v. Settle*, 315 S.C. 510, 445 S.E.2d 651, 655 (Ct. App. 1994). The non-movant, therefore, must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baughman,* 410 S.E.2d at 545 (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Thus, "unsupported speculation is not sufficient to defeat a [properly supported] summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Dickert*, 411 S.E.2d at 673 (*citing Anderson*, 477 U.S. at 252).

**B.     There is No Material Issue of Fact Regarding the Spoliation of Evidence.**

In their complaint, the Plaintiffs allege that the Defendant Blossman Gas "secretly" tested the gas water heater without anyone present on behalf of the Tuckers and, thereafter, destroyed the heater. The Plaintiffs boldly demand that Blossman Gas' spoilation of the gas hot water heater entitles the Plaintiffs to an inference against the Defendants regarding the defective condition of the gas water heater and its connection to the fire which destroyed the Tucker's home. All of the evidence suggests that Blossman Gas collected the water heater with the permission and under the supervision of the Tucker's representative, that the Tuckers and State Farm were informed of the inspection and testing of the water heater and even directed their own expert to attend the testing at the Blossman facility in Easley, South Carolina. The Tuckers' allegations are completely unfounded in reality.

Spoliation is defined as the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583 (2001). To draw and adverse inference from the absence, loss or destruction of evidence under the spoliation of evidence rule, it must appear that the evidence would have been relevant to an issue at trial. *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148 (1995). Additionally, the adverse inference about a party's consciousness of weakness of his case cannot be drawn under the spoilation of evidence rule merely from his negligent loss or destruction of evidence. The inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulting in its loss or destruction. *Id.*

The Tuckers' water heater was certainly not the victim of spoliation and Blossman Gas has exuded every effort to preserve the integrity of the water heater as evidence. The "journey" of the Tucker's water heater began on October 5, 2002 when Rex Barnes, a Blossman service technician, was directed by State Farm to collect the water heater from the Tucker's home. The Tucker's home was completely destroyed by fire and plans had been made for the clearing of remains and debris. State Farm and the Tuckers were fully advised of Mr. Barnes' actions and were present during the removal of the heater. On or about November 11, 2000, Phil Brooks, an expert for State Farm, completed and submitted a detailed summary of his investigation and findings to State Farm. In pertinent part, Mr. Brooks stated:

> I examined and eliminated every source of ignition in the fire origin area with the exception of the water heater. You contacted Blossman Propane and arranged to have the water heater collected by a Blossman representative. During the afternoon of October 5, 2000, Mr. Rex Barnes arrived on site to pick up the water heater. During the conversation with Mr. Barnes, we expressed the importance of maintaining the water heater pending a joint inspection by our representative at their facility. I also advised Mr. Barnes that we were relinquishing custody of the water heater to Blossman Propane with the express condition that no test or examination of the unit be conducted without our representative being present. Mr. Barnes acknowledged our request. *(Report of Nov. 11, 2000, Attached and Incorporated Herein as "Exhibit A")*

On or about November 5, 2002, Jean McDowell, Defendant Blossman Gas's expert, wrote Bob Harris of Rheem Manufacturing Company and Lawanda Holliman of State Farm Insurance Company a two page letter detailing his intention to examine and test the water heater on November 21, 2002 at 9:00 am and inviting State Farm and Rheem Manufacturing representatives to be present during the test. This letter is attached, incorporated herein, and labeled "Exhibit B."

As anticipated, on November 21, 2002, CORE Engineering examined, on behalf

of State Farm, photographed and observed testing of the Tucker water heater at Blossman Gas' facility in Easley, South Carolina. In attendance were Jean McDowell, William Johnson[1], expert for State Farm, Jacob Hall, a representative of Rheem Manufacturing, technicians from Blossman and CORE. This meeting was commemorated in a November 25, 2002 correspondence to Lawanda Holliman of State Farm. This letter is attached, incorporated herein, and labeled "Exhibit C."

Since its removal from the Tuckers' home on October 5, 2002, the water heater has remained in a preserved state at the Blossman facility in Easley, South Carolina. Fourth Circuit Courts clearly require a showing of "willful conduct resulting in loss or destruction." Blossman Gas has demonstrated no such conduct. While a district court has broad discretion in choosing an appropriate sanction for spoliation, the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine; in addition, a court must find some degree of fault to impose sanctions. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (2001). There is no evidence that the water heater in question has been altered or

---

[1]
| | Q. | When – when he contact you or Miss Holliman contacted you, what were you asked to do? |
|---|---|---|
| | A. | They wanted me to observe a test that was going to occur in – at Blossman Gas involving the subject water heater. |
| | Q. | And did you do that? |
| | A. | Yes. |
| | Q. | When was that test? |
| | A. | On November 21st, 2002. |

(Deposition of William B. Johnson, line 23, p. 10- line 4, p.11)

6

destroyed. No harm or prejudice has resulted to the Tuckers due to any action or any action by Blossman Gas. Accordingly, Blossman Gas's Motion for Partial Summary Judgment on the issue of spoliation should be granted.

## CONCLUSION

Where, as here, the material facts are undisputed and the moving party is entitled to judgment as a matter of law on an issue, summary judgment is appropriate. That standard has been met here with regard to the spoliation of evidence. Partial summary judgment should be granted in favor of the movants.

       **WILLCOX, BUYCK & WILLIAMS, P.A.**

       By: _____
        Hugh L. Willcox, Jr.  I.D. No. 4666
        PO Box 1909
        Florence, SC 29503-1909
        (843) 662-3258 - Tel
        (843) 662-3258 - Fax
        **ATTORNEYS FOR DEFENDANT
        BLOSSMAN GAS OF NORTH CAROLINA, INC.
        d/b/a BLOSSMAN PROPANE GAS & APPLIANCE**

June 30, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jerry E. Tucker and Shirley W. Tucker, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Blossman Gas of North Carolina, Inc.)<br>d/b/a Propane Gas & Appliance; and )<br>Rheem Manufacturing Co., )<br>)<br>Defendants. )<br>_____) | C/A No. 6:03350613<br><br><br><br>**CERTIFICATE OF MAILING** |

  I, the undersigned, an employee of the law office of Willcox, Buyck & Williams, for Hugh L. Willcox, Jr., do hereby certify that I have served **DEFENDANT BLOSSMAN GAS OF NORTH CAROLINA, INC. d/b/a BLOSSMAN PROPANE GAS & APPLIANCE'S <u>AMENDED</u> MOTION FOR PARTIAL SUMMARY JUDGMENT and MEMORANDUM IN SUPPORT OF MOTION** on the 30th day of June, 2004, by depositing in the United States Mail, postage prepaid, to the address clearly shown, to the following individual at the following address:

    Laura W. H. Teer, Esquire
    **Swagart, Walker, Martin & Reibold PA**
    PO Box 10410
    Greenville SC 29603
    **Attorney for Plaintiffs**

    John Kuppens, Esquire
    **Nelson Mullins Riley & Scarborough LLP**
    PO Box 11070
    Columbia SC 29211
      - and -
    William S. Brown, Esquire
    **Nelson Mullins Riley & Scarborough LLP**
    PO Box 10084
    Greenville SC 29601
    **Attorney for Rheem Manufacturing Co.**

            Jacqueline A. Johnson
            Secretary to HUGH L. WILLCOX, JR.

# FIRE ORIGIN & CAUSE

# REPORT

### PREPARED FOR:

Doug Acker

State Farm Insurance

**THIS IS A PRIVILEGED AND CONFIDENTIAL REPORT**

---

**OPINIONS EXPRESSED HEREIN ARE BASED ON INFORMATION AVAILABLE AT THE ISSUANCE OF THIS REPORT. WE RESERVE THE RIGHT TO MODIFY OPINIONS UPON THE PRESENTATION OF RELEVANT INFORMATION.**

EXHIBIT
A
ALL-STATE LEGAL SUPPLY CO.

**BROOKS REPORTS, INCORPORATED**

November 11, 2000



W. PHILLIP BROOKS, CFI
POST OFFICE BOX 582
COLUMBIA SOUTH CAROLINA
29202-0582
PHONE: 803-796-9654
E-MAIL: phillipbrooks@sprintmail.com

Mr. Doug Acker
State Farm Insurance
Post Office Box 24500
Greenville, South Carolina 29616 4500

Re:   Insured:     Jerry Tucker
       Claim #:     40 A018 937
       D/Loss:      October 3, 2000
       Our File:    BR00094

Dear Mr. Acker:

On October 4, 2000, you requested that I examine the fire-damaged home at 108 Ravenwood Circle in Piedmont, South Carolina to determine the fire origin and fire cause. On October 5, 2000, I met with you, Mr. Jerry Tucker and Mrs. Shirley Tucker at the loss site and initiated the investigation. I completed the scene examination on October 6, 2000.

The following exhibits are enclosed with this report:

- (1) Diagram showing the water heater position in relation to the north exterior wall, common to the dining room.
- (102) One hundred-two color photographs, mounted, with captions.

The fire originated in the immediate vicinity of a propane fired, water heater located under a carport near the southwest corner of the carport. Throughout this report, the main entrance, facing Ravenwood Circle, is regarded as "south". The water heater, identified as a Rheem, Model 21V40-7P, Serial #0696A21995, was leased by the insured from Blossman Propane in Easley, South Carolina.

I examined and eliminated every source of ignition in the fire origin area with the exception of the water heater. You contacted Blossman Propane and arranged to have the water heater collected by a Blossman representative. During the afternoon of October 5, 2000, Mr. Rex Barnes arrived on site to pick up the water heater. During our conversation with Mr. Barnes, we

INVESTIGATING FIRE & FRAUD SINCE 1987

*Fire Origin & Cause Report:*        *Insured: Jerry Tucker*                *Page 2*

expressed the importance of maintaining the water heater pending a joint inspection by our representative at their facility. I also advised Mr. Blossman that we were relinquishing custody of the water heater to Blossman Propane with the express condition that no test or examination of the unit be conducted without our representative being present. Mr. Barnes acknowledged our request.

STRUCTURE

The loss is a single-family, one level, ranch style home, constructed on a raised foundation. The home contains three bedrooms and two bathrooms. An addition to the rear of the structure provided an office and a small sitting room. The addition also included a double carport. Mr. and Mrs. Tucker are the only occupants of the home and neither were present when the fire occurred. Mr. Tucker reports no problems with the electrical system and no problems with the water heater. Mrs. Tucker was out of town when the fire occurred. Mr. Tucker left the home on the morning of the fire, around 6:15 a.m.

FIRE DISCOVERY AND FIRE DEPARTMENT RESPONSE

Around 4:00 p.m., Miss Amena Zaphran, a seventeen year-old high school student was pulling into her driveway at 100 Ravenwood Circle. Ms. Zaphran observed smoke extending from the roof of the Tucker home. Nina Zaphran, Amena's mother was driving another vehicle and arrived behind her daughter. She too observed heavy smoke showing from the Tucker house, above the tree line. Miss Zaphran notified the fire department.

The Powdersville Fire Department responded to the alarm and upon arrival found the attic fully involved in fire. Fire was burning through the roof over the dining room and kitchen areas on the north roof slope. Chief Jonathan Tingen contacted the Anderson County Fire Service and requested assistance in determining the fire origin and fire cause. Investigator Pelham Medlock responded and conducted a scene examination. According to Chief Tingen, Inv. Medlock suspects that the fire originated at the water heater. Chief Tingen also advised that Investigator Medlock found the cabinet intact with the door in place. He removed the cover and inspected the water heater.

Fire Origin & Cause Report:          Insured:  Jerry Tucker                    Page 3

## SCENE EXAMINATION

Exterior and interior photographs were taken of the structure before debris alteration or removal. A perimeter inspection revealed no fire extension through any of the windows. The roof system sustained extensive fire damage with collapse of over 50% of the roof system.

The most extensive, low-level fire damage occurred on the exterior at the southwest corner of the carport. Fire in this area burned through the vinyl siding, T-111 wood sheet siding and spread along the upper elevations of the north exterior wall in an easterly direction, toward the kitchen. Fire penetrated the north exterior wall and involved combustibles in the dining room.

The initial overhaul operation commenced in the dining room. A systematic removal of debris in this area uncovered the furnishings, appliances and appliance cords. The following ignition sources were identified;

- (2) 120V duplex outlets, located on the north interior wall of the dining room
- Quartz Halogen, pole lamp, located near the northeast corner of the dining room
- Incandescent pole lamp, located, along the north wall on the west side of the love seat
- four-gang light switch located on the north dining room wall, near the entrance to the office
- (1) Exterior quartz floodlight, mounted on the overhang at the southwest corner of the carport.
- Chlorine pellets (spontaneous heating)

*(2) 120V Duplex Outlets.* An examination of the two duplex outlets revealed no evidence of an anomaly normally associated with electrical fault activity. There were no appliance cords plugs into the east side outlet. A pole lamp, equipped with an incandescent bulb, and located on the west side of the loveseat, was plugged into the west side outlet on the north wall. No other appliance cords were plugged in the outlets.

*Quartz Halogen Pole Lamp:*  The Quartz-halogen pole lamp was equipped with an in-line foot switch on the power cord. The power cord prongs were found adhered to the carpeting, near the lamp base. This lamp power cord was not plugged into an outlet at the time of the fire.

*Fire Origin & Cause Report:*        *Insured: Jerry Tucker*                          *Page 4*

*Incandescent Pole Lamp*: The Incandescent pole lamp was located, west of the love seat and in the area that sustained the most severe fire damage. A portion of this lamp cord was found under the base. The power cord prongs were found in the outlet, below the four-gang light switch. The power cord was detached from the prongs. The prongs were inspected and no electrical damage noted.

*Four-Gang Light Switch:* The individual switches were removed from the four-gang box and examined. The conductors were in good condition and no evidence of electrical fault activity was found. All four switches were in the "off" position when the fire occurred.

*Exterior Quartz Floodlight:* A quartz-halogen bulb and bulb holder component were found in the carport debris, approximately eight feet from the southwest corner. According to Mr. Tucker, the exterior floodlight was controlled by one of the four switches on the north dining room wall. All switches were in the off position at the time of the fire. Soot covered the bulb envelope. This soot was removed to expose an intact filament.

*Chlorine:* An odor of chlorine was detected while in the carport area. Chief Tingen also reported the odor of chlorine after extinguishing the fire. Chief Tingen did not locate the chlorine container. Mr. Tucker reports that he kept pool chlorine in a plastic pail near the swimming pool and did not store chlorine near the house.

I noted several significant burn patterns during the examination of the dining room area. The wall stud, just east of the west side electrical outlet was consumed. The next stud on the east side, sustained extensive damage and separated from the top plate. The east side of a wooden rocking chair, positioned between the west outlet and the office door, sustained more fire damage on the east side. The steel framed bench seat, at the north side of the dining room table, exhibited a localized oxidation pattern. This pattern was relative in position, to the wall stud that was consumed during the fire. The exposed, and framed, ceiling beam, separating the dining area from the living room area, sustained considerably more fire damage on the north side, near the west end. These burn patterns are consistent with the fire origin area previously noted and denote natural fire progression activity. I found no evidence to suggest that attempts were made to deliberately start or spread this fire from the initial point of fire origin.

*Fire Origin & Cause Report:*    **Insured: Jerry Tucker**    *Page 5*

The only ignition source, I could not eliminate during the scene examination was the propane fired water heater. I have contacted Mr. Bill Johnson, P.E. of CORE Engineering Corp. to examine the subject water heater at a time mutually convenient for all parties. A final report will be forwarded upon the completion of the water-heater examination.

Sincerely,
BROOKS REPORTS, INC.

Phillip Brooks, C.F.I.

PB

Enc:

## Carport View of Water Heater & General Vicinity



# McDowell / Owens

Forensic Engineering
Fire Sciences
Research
Testing

November 05, 2002

Mr. Bob Harris
Rheem Manufacturing Company
2600 Gunter Park Drive East
Montgomery, Alabama 36109

Ms. Lawanda Holliman
State Farm Insurance Company
P.O. Box 100061
Duluth, Georgia 30096-9361

Re: Water Heater Examination and Testing
    Jerry Tucker Fire
    Date of Loss: 10/02/00
    Greenville, S.C.
    Ranger Insurance Claim No. 196835
    State Farm Claim No. 40A018937
    McDowell Owens Engineering File No. 004308

Dear Interested Parties:

Please be advised that examination, documentation and testing of a Rheem, Model 21V40-7P, LPG fired water heater will be conducted on November 21, 2002 at 9:00 AM, at Blossman Gas Company, 4409 Earl E. Morris Jr. Highway, Easley, South Carolina. The telephone number at Blossman Gas Company is 864-269-3441.

You and/or your representatives are invited to be present. In order to participate, please forward any proposed testing protocol for incorporation into an overall protocol. A copy of the complete document will be returned via email address, if furnished, otherwise the method as received.

Should neither reasonable protocols nor suggested methodology be received, it is understood that you will participate as an observer only. Suggestions or requests may not be granted during the testing and/or documentation, but all accommodations possible will be made.

Discussion is recommended between interested parties in order that all reasonable requests may be fulfilled.

Ph: 281-358-2876 • Fax: 281-358-3971
1075 Kingwood Drive, #100 • Kingwood (Houston), Texas 77339
www.mcdowellowens.com • e-mail: info@mcdowellowens.com



EXHIBIT B

Please respond to Jean L. McDowell, McDowell Owens Engineering, Inc., 1075 Kingwood Drive, Suite 100, Kingwood, Texas, 77339. Telephone: 281-358-2876, Fax: 281-358-3971. Email: j.mcdowell@mcdowellowens.com.

Thank you for your anticipated response and participation.

Sincerely,
McDOWELL OWENS ENGINEERING, Inc.

Jean L. McDowell, B.Sc., MIFirE
Principal/Consultant

cc: Ms. Bonnie Roberts
Ranger Insurance Company

McDowell / Owens

# CORE ENGINEERING, CORP.

1000 Johnnie Dodds Boulevard, Suite 103-357 Mount Pleasant, South Carolina 29464
(843) 881-9522
Fax: (843) 881-0139

November 25, 2002

Ms. Lawanda Holliman
State Farm Insurance
Post Office Box 10061
Duluth, Georgia 30096

REFERENCE:   Examination of Water Heater
             Claim Number: 4U-A018-937
             Insured: Mr. Jerry Tucker
             Date of Loss: October 10, 2002
             CORE File Number: 3-2315-2072

Dear Ms. Holliman:

As requested, CORE Engineering examined, photographed and observed testing of a fire-damaged water heater from the above-referenced claim. We also reviewed a report prepared by Mr. Jean McDowell, an engineer representing Blossman Gas, Inc.

CORE observed the water heater testing at Blossman Gas, Easley, South Carolina on November 21, 2002. Mr. McDowell, Mr. Jacob Hall of Rheem Water Heaters, technicians from Blossman and CORE participated in the testing. We spoke with the Blossman technician who removed the water heater from the home. We also reviewed scene photographs taken by Mr. McDowell.

The water heater's supply gas piping and the water heater's control were pressurized with LP gas. When its gas piping was first pressurized, CORE did not see any gas leaks in its supply piping or its gas control. The pilot tubing had to be cleared with pressurized air before we could light the pilot. While the unit was stored, we believe debris may have accumulated in the pilot tubing.

During the testing, the gas control, the pilot system and the burner functioned normally. We saw no evidence that the water

---

■ Fire/Explosion Origin and Cause   ■ Mechanical/Electrical Systems Analysis and Testing   ■ Property Loss



EXHIBIT C